1
Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Tel.: (310) 595–9500
Fax: (310) 595–9501

Ian M. Ross *(Pro Hac Vice)*
iross@sidley.com
Christopher D. Joyce
cjoyce@sidley.com *(Pro Hac Vice)*
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Tel.: (305) 391–5100
Fax: (305) 391–5101

Marissa X. Hernandez (SBN 341449)
marissa.hernandez@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Tel.: (213) 896–6000
Fax: (213) 896–6600

*Attorneys for Defendant Walgreen Co. d/b/a Walgreens*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.C. and T.S., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO. d/b/a WALGREENS, an Illinois Corporation,<br><br>Defendant. | Case No. 5:23-cv-01933-JGB-SP<br><br>Assigned to: Hon. Jesus G. Bernal<br><br>**DEFENDANT WALGREEN CO.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT WITH PREJUDICE**<br><br>[[Proposed] Order filed concurrently]<br><br>Judge: Hon. Jesus G. Bernal<br>Date: March 4, 2024<br>Time: 9:00 am<br>Location: George E. Brown, Jr. Federal Courthouse<br>Courtroom 1<br>3470 Twelfth Street<br>Riverside, CA 92501<br><br>Complaint filed: July 28, 2023 |

1   TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that on March 4, 2024 at 9:00 a.m., or as soon

3   thereafter as counsel may be heard, in Courtroom 1 of the George E. Brown, Jr. Federal

4   Courthouse located at 3470 Twelfth Street, Riverside, CA 92501, Defendant Walgreen

5   Co. d/b/a Walgreens ("Walgreens"), by and through its counsel of record, will and

6   hereby do, move the Court for an order dismissing Plaintiffs' Second Amended Class

7   Action Complaint with prejudice for failure to state a claim under Federal Rule of Civil

8   Procedure 12(b)(6).

9   This Motion is made following the conference of counsel pursuant to L.R. 7–3,

10  which took place on January 11, 2024. This Motion to Dismiss is based on this Notice

11  of Motion and Motion, the accompanying memorandum of points and authorities, and

12  all other papers and pleadings on file in this action, and such other oral and/or

13  documentary evidence or argument as may be presented at the time of the hearing on

14  this matter.

15

16   Dated: January 19, 2024                SIDLEY AUSTIN LLP

17

18

19                                          By:    *Amy P. Lally*
                                                   _____

20                                                 Amy P. Lally

21                                                 Ian M. Ross
                                                   Christopher D. Joyce

22                                                 Marissa X. Hernandez

23                                                 *Attorneys for Defendant Walgreen Co.*
                                                   *d/b/a Walgreens*

24

25

26

27

28

ii

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL ALLEGATIONS ........................................................................ 2

   A. Allegations Regarding the Alleged Tracking Tools ........................... 2

   B. Allegations Regarding a Hypothetical User's Visit to the Website ................ 3

   C. Allegations Regarding Plaintiffs' Visit to the Website ..................... 5

III. LEGAL STANDARD ................................................................................... 6

IV. ARGUMENT.................................................................................................. 6

   A. Plaintiffs' Claims Should Be Dismissed Because They Fail to Plead that Their Alleged Personal Health Data Was Disclosed. ..................... 6

   B. Plaintiffs' SAC Should Be Dismissed Because It Fails to Plead a Plausible Claim for Relief. ........................................................................ 9

      1. Plaintiffs' Invasion of Privacy Claim (Count 1) Should Be Dismissed. ................................................................................. 10

      2. Plaintiffs' Negligence Claim (Count 2) Should Be Dismissed........... 12

      3. Plaintiffs' Claim for Unjust Enrichment (Count 3) Should Be Dismissed. ................................................................................. 14

      4. Plaintiffs' Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA") Claims (Counts 4 and 5) (the "Wiretap Claims") Must Be Dismissed........................... 16

      5. Plaintiff's California's Unfair Competition Law ("UCL") and California Consumers Legal Remedies Act ("CLRA") Claims (Counts 6 through 8) Should Be Dismissed......................................... 19

      6. Plaintiff's Claim Under the Virginia Consumer Protection Act (Count 9) Should Be Dismissed............................................... 22

V. CONCLUSION ............................................................................................ 23

CERTIFICATE OF COMPLIANCE.................................................................. 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adardour v. Am. Settlements, Inc.*,
    No. 1:08-cv-798, 2009 WL 1971458 (E.D. Va. July 2, 2009) ......................... 22, 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 6, 23

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) .......................................................................... 14

*Astra USA, Inc. v. Santa Clara Cty.*,
    563 U.S. 110 (2011) ....................................................................................... 12

*Attias v. CareFirst, Inc.*,
    365 F. Supp. 3d 1 (D.D.C. 2019) .................................................................... 23

*Austin v. Atlina*,
    No. 20-CV-6363-YGR, 2021 WL 6200679 (N.D. Cal. Dec. 22, 2021) ................ 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 6

*Belluomini v. Citigroup, Inc.*,
    No. cv-13-01743-CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ................ 10

*Berkla v. Corel Corp.*,
    302 F.3d 909 (9th Cir. 2002) .......................................................................... 13

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......................................................... 18

*Brown v. Google LLC*,
    No. 20-cv-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .................. 4

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) .............................................................. 4

*Campbell v. Facebook Inc.*,
    315 F.R.D. 250 (N.D. Cal. 2016) .................................................................... 19

iv

*Campbell v. Facebook Inc.*,
 77 F. Supp. 3d 836 (N.D. Cal. 2014)......................................................21

*Cottle v. Plaid Inc.*,
 536 F. Supp. 3d 461 (N.D. Cal. 2021)....................................................21

*Cousin v. Sharp Healthcare*,
 --- F. Supp. 3d ---, 2023 WL 4484441 (S.D. Cal. July 12, 2023) ..................*passim*

*Cousin v. Sharp Healthcare*,
 No. 22-cv-2040-MMA-DDL, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ........................................................................................................7

*Crittenden v. Apple, Inc.*,
 No. 5:21-CV-04322-EJD, 2022 WL 2132224 (N.D. Cal. June 14, 2022) ......................................................................................................9

*Doe v. Meta Platforms, Inc.*,
 No. 22-CV-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ...............................................................................................13, 19

*Durell v. Sharp Healthcare*,
 183 Cal. App. 4th 1350 (2010) .............................................................14

*In re Facebook Consumer Privacy User Profile Litig.*,
 402 F. Supp. 3d 767 (N.D. Cal. 2019)....................................................21

*In re Facebook Privacy Litig.*,
 572 F. App'x 494 (9th Cir. 2014)...........................................................21

*In re Facebook, Inc. Internet Tracking Litig.*,
 956 F.3d 589 (9th Cir. 2020) ...........................................................16, 21

*Fravel v. Ford Motor Co.*,
 973 F. Supp. 2d 651 (W.D. Va. 2013).....................................................22

*Friedman v. DirecTV*,
 262 F. Supp. 3d 1000 (C.D. Cal. 2015)...................................................13

*Garcia v. Sony Comput. Entm't Am., LLC*,
 859 F. Supp. 2d 1056 (N.D. Cal. 2012)...................................................20

*In re Google Assistant Privacy Litig.*,
 546 F. Supp. 3d 945 (2021) ...................................................................15

v

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................................. 18, 19

*Griffith v. TikTok, Inc.*,
    No. 5:23-cv-00954, 2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ........................ 14

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................................. 12

*Hammerling v. Google LLC*,
    No. 21-CV-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ............... 14

*Hart v. TWC Prod. & Tech. LLC*,
    526 F. Supp. 3d 592 (N.D. Cal. 2021) .................................................................... 20

*Hart v. TWC Prod. & Tech. LLC*,
    No. 20-CV-03842-JST, 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ................. 15

*Haskins v. Symantec Corp.*,
    654 F. App'x 338 (9th Cir. 2016) ........................................................................... 21

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ......................................................... 9, 10, 11

*Holly v. Alta Newport Hosp., Inc.*,
    No. 219CV07496ODWMRWX, 2020 WL 6161457 (C.D. Cal. Oct.
    21, 2020) ................................................................................................................. 14

*In re Hulu Privacy Litig.*,
    No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal., Apr. 28, 2014) ...................... 8

*James v. Delta Motors, LLC*,
    No. 7:22-CV-441, 2023 WL 3306551 (W.D. Va. May 8, 2023) ............................ 22

*Kaiu Scuba Ctr, Inc. v. Padi Ams., Inc.*,
    No. SACV101579DOCMANX, 2011 WL 13227827 (C.D. Cal., Mar.
    10, 2011) ................................................................................................................. 13

*Katz-Lacabe v. Oracle Am., Inc.*,
    No. 22-CV-04792-RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023)
    ................................................................................................... 16, 17, 19, 20

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................... 20

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

*Kurowski v. Rush Sys. for Health*,
    659 F. Supp. 3d 931 (N.D. Ill. 2023).................................................................17, 19

*Licea v. Am. Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023)...................................................................17

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012)............................................................11, 14

*Medoff v. Minka Lighting, LLC*,
    No. 2:22-CV-08885-SVW-PVC, 2023 WL 4291973 (C.D. Cal. May
    8, 2023).....................................................................................................................14

*Millennium TGA, Inc. v. Comcast Comm'ns LLC*,
    286 F.R.D. 8 (D.D.C. 2012) .......................................................................................8

*Ove v. Gwinn*,
    264 F.3d 817 (9th Cir. 2001) ......................................................................................6

*Polk v. Crown Auto, Inc.*,
    228 F.3d 541, 543 (4th Cir. 2000) ...........................................................................23

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021)......................................................................17

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir.
    2018)..........................................................................................................7, 8, 17, 21

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ....................................................................................15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ......................................................................13

*Student A v. Liberty Univ., Inc.*,
    602 F. Supp. 3d 901 (W.D. Va. 2022)................................................................22, 23

*Sussman v. Am. Broad. Cos., Inc.*,
    186 F.3d 1200 (9th Cir. 1999) ..................................................................................17

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014)........................................................................21

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

*Tanner v. Acushnet Co.*,
  No. 8:23-cv-00346-HDV-ADSx, 2023 WL 8152104 (C.D. Cal. Nov.
  20, 2023) .................................................................................................. 9, 21

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) .................................................................. 18

*United States v. Forrester*,
  512 F. 3d 500 (9th Cir. 2008) .............................................................. 9, 12

*Vartanian v. VW Credit, Inc.*,
  No. 2:11-cv-10776-SVW-RZ, 2012 WL 12326334 (C.D. Cal. Feb. 22,
  2012) ........................................................................................................ 18

*Vinluan-Jularbal v. Redbubble, Inc.*,
  No. 2:21-cv-00573-JAM-JDP, 2021 WL 4286539 (E.D. Cal. Sept. 21,
  2021) ........................................................................................................ 20

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................................. 7

*Wilson v. Rater8, LLC*,
  No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal., Oct. 18,
  2021) ........................................................................................................ 18

*Wynn's Extended Care, Inc. v. Bradley*,
  619 F. App'x 216 (4th Cir. 2015) ............................................................ 22

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................ 11, 17

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ................................................................ 18

**California Cases**

*City of Oakland v. The Oakland Raiders*,
  83 Cal. App. 5th 458 (2022) ................................................................... 14

*Doe I v. Sutter Health*,
  No. 34-2019-00258072-CU-BT-GDS, 2020 WL 1331948 (Cal. Super.
  Ct. Jan. 29, 2020) ...................................................................................... 8

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

*Hill v. Nat'l Collegiate Athletic Assn.*,
   7 Cal. 4th 1 (1994) ................................................................... 12

*Moore v. Regents of Univ. of California*,
   51 Cal. 3d 120 ......................................................................... 13

**Federal Statutes**

18 U.S.C.A.
   § 2510 ....................................................................................... 18

18 U.S.C.
   § 2510 .................................................................................. 16, 17
   § 2511 .................................................................................. 16, 17

Health Insurance Portability and Accountability Act (HIPAA) ........................... 12, 13

**California Statutes**

Cal. Bus. & Prof. Code
   § 17200 ................................................................. 19, 20, 21, 23
   § 17204 ..................................................................................... 20

Cal. Civ. Code
   § 1750 ............................................................................ 19, 20, 23
   § 1770 ..................................................................................... 20

Cal. Pen. Code
   § 630 ............................................................................... 16, 17, 18
   § 631 ............................................................................... 16, 17, 18

**Other State Statutes**

Va. Code § 59.1-204(A) ............................................................... 22, 23

**Other Authorities**

Cal. Constitution ................................................................... 10, 12

Fed. R. Civ. P.
   R. 8 ............................................................................ 6, 20, 22
   R. 9(b) ...................................................................... 20, 22
   R. 12(b)(6) .......................................................................... 6

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

Fed. R. Evid. R. 201 ........................................................................................ 4

C.D. Cal. Civ. R. 11–6.1 .............................................................................. 24

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

Defendant Walgreen Co. ("Walgreens") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss ("Motion") Plaintiff R.C. and Plaintiff T.S.'s ("Plaintiffs") Second Amended Class Action Complaint ("SAC").

## I.   INTRODUCTION

This is the third complaint filed in this matter. Like the prior two, and like many other cases filed in the past year, it purports to state putative class claims based on the alleged presence of commonly used (and, in cases like this one, fully disclosed) website tools on company websites. According to Plaintiffs, these website tools (called "tracking pixels" in the SAC) can take data disclosed on these websites—in this case, a public consumer-facing shopping website—and share that data with the third parties who design the tools (allegedly, Meta and Pinterest) for advertising purposes. Plaintiffs claim that the alleged disclosure, through "tracking pixels," of their shopping history on a public website violates privacy laws and statutes.

After Plaintiffs filed their First Amended Complaint ("FAC"), Walgreens moved to dismiss because the FAC failed to plead facts alleging that any of Plaintiffs' *personal health data* was disclosed by any of these purported tracking pixels. The SAC tries but fails to cure this deficiency. Like the FAC, the SAC is filled with conclusory allegations that describe in general terms the way in which tracking pixels *can* theoretically be used to disclose personal health data or HIPAA-protected health information when it is submitted on a website. But Plaintiffs fail to allege that this happened to them.

At most, what Plaintiffs allege is that they browsed a public website to shop for over-the-counter health products at some undisclosed time in the last year. Although the SAC lists a number of alleged dangers that tracking pixels purportedly pose when sensitive health information is disclosed in a private setting, Plaintiffs do not allege that they had signed into a secure patient or customer portal, or that they believed that they were operating on the website in a private mode or using a private browsing feature. Instead, what they allege is the virtual equivalent of walking down the aisle of an in-store Walgreens in public view. Setting aside the fact that Plaintiffs cannot allege a

reasonable expectation of privacy based on these allegations, Plaintiffs cannot claim that their website shopping history is somehow a disclosure of *their own personal health data* (as opposed to that of someone they were shopping for). Indeed, Plaintiffs' entire theory of liability is impermissibly tailored to the inferences one *could* draw based on their shopping history—Plaintiff T.S. expressly asks this Court to find a privacy claim plausible based on her purchase of an over-the-counter diabetes test kit because someone watching could "infer[] that she *or a family member* had diabetes." SAC ¶ 193 (emphasis added). Courts have consistently rejected these types of allegations absent facts showing that the plaintiffs actually disclosed *their* personal health data that was then intercepted by a third party.[1]

Plaintiffs' SAC also should be dismissed for the independent reason that their allegations fail to plausibly satisfy the elements of their claims. Plaintiffs plead a scattershot of plainly inapplicable causes of action, including common law theories that are inapplicable to their alleged privacy violations, and statutes that expressly require a plaintiff to allege an actual injury or loss, which Plaintiffs cannot allege. The remaining claims fail because Plaintiffs cannot allege that Walgreens engaged in "highly offensive" conduct, invaded their privacy without their consent, or that any of their allegedly personal data was ever disclosed or used by a third party. Accordingly, Plaintiffs' SAC should be dismissed with prejudice.

## II.   FACTUAL ALLEGATIONS

### A.   Allegations Regarding the Alleged Tracking Tools

Plaintiffs allege that Walgreens, a retailer headquartered in Illinois, uses tools to

---

[1] In Walgreens' motion to dismiss the FAC, it also demonstrated that Plaintiffs' allegations failed to plead any facts showing that any alleged tracking pixel was operating *on the specific webpages they visited*. Plaintiffs seemingly tried to address this deficiency with a series of conclusory allegations that the tracking pixels were placed on the pages they visited. SAC ¶¶ 184, 193. These allegations are still bereft of any facts making those allegations plausible, and they stand in sharp contrast to the general descriptions of how pixels operate from earlier in the SAC. *Cf id.* at ¶¶ 82–87. Plaintiffs fail to offer a single fact alleging that any of the events described in their visits to the Walgreens website were tracked or disclosed in the manner described in these general descriptions.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

track consumers on its shopping website, www.walgreens.com (the "Website"). SAC ¶¶ 1–2, 42. According to Plaintiffs, these tools include "tracking pixels" designed by Meta (Facebook), Pinterest, and other unnamed third parties (collectively, the "Tools"). *Id.* at ¶ 1. As Plaintiffs allege, these Tools could allow companies to track the data that is entered by consumers on their websites, *see id.* at ¶¶ 60–63, 74. According to Plaintiffs, these widely used Tools may also disclose "private information" to third parties for advertising purposes. *Id.* at ¶¶ 11–14.

The SAC contains a generic description of the Tools and how they allegedly work. Plaintiffs allege that the Meta Pixel is a "bit[] of code that advertisers can integrate into their webpages" to collect user activity. *Id.* at ¶ 78. The Meta Pixel allegedly is "automatically configured" to capture nonpersonal website data like a "webpage's Universal Resource Locator ('URL'), metadata, button clicks, and other user interactions with a webpage." *Id.* at ¶ 79. It allegedly can also be manually configured to collect information about other events called "custom events", which Plaintiffs allege can include personal health data when it is submitted on a webpage. *Id.* at ¶¶ 80–87, 90.

Plaintiffs broadly allege that the Website was configured to collect their personal data when they shopped and made purchases. *Id.* at ¶¶ 54, 93–94. Plaintiffs do not allege facts or details showing that any specific webpages allegedly collected data. Instead, Plaintiffs allege in conclusory terms that, "[o]n information and good faith belief, each step of this [shopping] process was tracked and logged by the Meta Pixel." *Id.* at ¶ 54.

**B.  Allegations Regarding a Hypothetical User's Visit to the Website**

Plaintiffs allege, "[s]tarting on [*sic*] date unknown and continuing to the present," Walgreens began using the Meta Pixel on its Website to "transmit[] Private Information shared by Plaintiff and Class Members."[2] *Id.* at ¶ 88. Although Plaintiffs vaguely allege that Walgreens' privacy policies do not disclose the use of tracking pixels, Walgreens'

---

[2] Plaintiffs define "Private Information" as "personally identifiable information ('PII') and protected health information ('PHI')." SAC ¶ 1.

3

Online Privacy and Security Policy expressly states that it may "work with other companies who place ***cookies, tags, and web beacons on our websites***" to "help operate our website and provide you with additional products and services." Am. Req. for Judicial Notice ("Am. RJN"), Ex. A at 7 (emphasis added).[3] California customers like Plaintiff R.C. are ***specifically told*** that Walgreens may share "online identifiers," information about "products or services purchased, obtained or considered," and "other purchasing or consuming histories or tendencies" with third parties including social media companies. *Id.* at 11–12. Virginia customers like Plaintiff T.S. receive similar disclosures. *Id.* at 15–16. California customers are also told that this information ***could*** include "sensitive personal information" "such as information concerning your health, which may include certain health-related retail product purchases." *Id.* at 11–12, 15–16.

According to Plaintiffs, when a hypothetical user visited the Website "and completed the steps necessary to purchase sensitive healthcare products," the Meta Pixel was configured to allegedly share the "name of the sensitive healthcare products" and "the fact that the customer was purchasing these sensitive healthcare products." SAC at ¶ 90. Plaintiffs also allege that when these users used the Website, "their identities, personal identifiers, and health information (***including their medical conditions and treatments sought***) was disclosed to Meta." *Id.* at ¶ 93 (emphasis added). Plaintiffs do not allege how any data regarding someone's medical conditions and treatments is disclosed—to the contrary, Plaintiffs expressly allege that the Pixel works only to capture "events" when a user submits that information on a webpage. *Id.* at ¶ 85; *see also id.* at ¶ 135 (tracking technologies may access personal health

---

[3] The Court may consider Walgreens' Online Security and Privacy Policy not only because it is incorporated by reference in the FAC, but also because it is subject to judicial notice because it is "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined." Fed. R. Evid Rule 201; *Brown v. Google LLC*, No. 20-cv-03664-LHK, 2021 WL 6064009, at *7 (N.D. Cal. Dec. 22, 2021) ("documents [that] appear on publicly available websites and are thus proper subjects of judicial notice"); *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 617 (N.D. Cal. 2021) (granting judicial notice as to multiple versions of Google's privacy policy); *Brown*, 2021 WL 6064009, at *7 (same).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

information "that the individual may provide when interacting with the webpage"). Plaintiff alleges only "on information and belief" that Walgreens "intentionally configured" the tracking pixels to disclosure the names of purchases of sensitive healthcare products. *Id.* at ¶ 90.

### C.  Allegations Regarding Plaintiffs' Visit to the Website

Plaintiff R.C. is a California resident who alleges she visited the Website at an unknown time in the last year to shop for products. SAC at ¶¶ 182–85. According to R.C., she "specifically sought to purchase Monistat" and "placed Monistat in her virtual shopping cart on the Website." *Id.* at ¶ 183. R.C. does not allege that she (i) disclosed any personally identifiable information on the Website, (ii) disclosed any medical condition or treatment on the Website, or (iii) purchased Monistat on the Website. She also does not allege any facts (other than a vague allegation pleaded on information and belief) showing that the Tools (iv) operated on the webpage with the Monistat product or (v) disclosed that Monistat was added to her shopping cart. Instead, R.C. offers only a conclusory allegation that a third party receiving the allegedly disclosed data would have been able to make an "inference that she had a yeast infection." *Id.* at ¶ 184.

Plaintiff T.S. is a Virginia resident who also alleges that she visited the Website to shop for products. *Id.* at ¶¶ 191–93. According to T.S., she "specifically sought to purchase a diabetes testing kit" on the Website. *Id.* at ¶ 192. T.S. does not allege what actions she took on the Website and her allegations are vague as to whether she actually made any purchase. Likewise, T.S. does not allege that (i) she disclosed any personally identifiable information while on the Website, (ii) she disclosed any medical condition or treatment on the Website, or (iii) the Tools could have disclosed anything other than information that would have permitted an "inference" "that she or a family member had diabetes." *Id.* at ¶ 193. Instead, T.S. also offers the conclusory allegation that her

1   "Private Information was disclosed to Meta." *Id.* at ¶ 194.[4]

2   **III.   LEGAL STANDARD**

3          To survive a motion to dismiss brought pursuant to Federal Rule of Civil

4   Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that

5   is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The

6   facts alleged must "allow[] the court to draw the reasonable inference that the defendant

7   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8   "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat

9   a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001); *see also Iqbal*,

10  556 U.S. at 678 (pleading cannot rely on "labels and conclusions," "a formulaic

11  recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of

12  'further factual enhancement'").

13  **IV.   ARGUMENT**

14          **A.    Plaintiffs' Claims Should Be Dismissed Because They Fail to Plead**

15                  **that Their Alleged Personal Health Data Was Disclosed.**

16          Federal Rule of Civil Procedure Rule 8's "plausibility standard . . . asks for more

17  than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

18  "Factual allegations must be enough to raise a right to relief above the speculative

19  level." *Twombly*, 550 U.S. at 555. Thus, in an invasion of privacy case, it is not enough

20  to plead an "overarching theory" that the defendant collected and disclosed "personal

21  and sensitive medical information" where plaintiffs "fail to factually explain their

22  personal participation" in the alleged activity. *Cousin v. Sharp Healthcare*, --- F. Supp.

23  3d ---, 2023 WL 4484441, at *3–4 (S.D. Cal. July 12, 2023). Likewise, plaintiffs cannot

24  "lump together a variety of alleged activity undertaken by [a defendant], some of which

25  is not actionable, with no meaningful factual support as to what activities" they engaged

26  ─────────────────────────

27  [4] Although T.S. alleges that, shortly after visiting the Website, "she started to receive unsolicited advertisements relating to her purchase of the diabetes testing kit," SAC ¶ 194, she does not allege any facts indicating that the reason that she purportedly

28  received those advertisements was her use of the Website.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

in on a website. *Id.* at *3; *see Warth v. Seldin*, 422 U.S. 490, 502 (1975) (plaintiffs "must allege and show that they personally have been injured," not discuss an injury suffered by other class members).

Here, Plaintiffs fail to plausibly connect their conclusory allegations regarding how the Tools ***could*** work to disclose personal health information with any specific allegations relating to the ***actual disclosure*** of ***their personal health information***. The majority of the SAC is filled with generic allegations of how a hypothetical website visit ***could*** have their personal health information disclosed when pixel trackers are configured to do so. But Plaintiffs fail to allege any specific facts suggesting that happened here.

First, Plaintiffs fail to allege that they actually disclosed any personal or confidential health information on the Website. As the *Cousin* court made clear, website-browsing efforts on a public website to research doctors and search for medical specialists is not personal or confidential "because 'nothing about [the] information relates specifically to [p]laintiffs' health' and the information is 'general health information that is accessible to the public at large.'" *Cousin*, 2023 WL 4484441, at *3 (quoting *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)); *see Smith*, 262 F. Supp. 3d at 955 (nothing about "URLs, or the content of the pages located at those URLs, relates to the past, present, or future physical or mental health or condition of an individual") (citations and quotations omitted).[5] Plaintiffs do not allege that they actually disclosed any personally

---

[5] After the plaintiffs in *Cousin* were given leave to amend, the district court found that their amended allegations were sufficient to state that they had shared personal protected health information. *See Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA-DDL, 2023 WL 8007350, at *3 (S.D. Cal. Nov. 17, 2023). However, those amended allegations stand in sharp contrast to the allegations here. There, the plaintiffs amended their complaint to allege that their interactions on the defendant's website included (1) booking an appointment to obtain treatment for a medical condition, (2) "set[ting] forth their particular medical conditions" and "search[ing] [d]efendant's website for doctors who specialize in these conditions and for information about their conditions (i.e., symptoms, treatments, procedures)", and (3) filtering the physician directory to search for a primary care physician for a particular condition. *Id.* Nothing like that is alleged

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

identifiable information or medical condition or treatment on the Website. *See* SAC at ¶¶ 182–85, 191–94. Courts have consistently rejected allegations that allege privacy violations because a third party supposedly could infer or surmise a plaintiff's health condition based on that plaintiff's browsing activity on a public website. *See Cousin*, 2023 WL 4484441, at *3 ("Plaintiffs cannot maintain their claims based upon the theory that [d]efendant's sharing of their browsing activity, collected on its publicly facing website, is a disclosure of their sensitive medical information.").[6]

Second, Plaintiffs fail to allege that they submitted any personal health information on the Website that was identifiable as their information. Plaintiffs do not allege that they were logged into any Walgreens (or Facebook) account at the times they browsed the Website (they allege only that they had a Facebook account) or provide any factual support for their allegation that any information disclosed would be identifiable as ***their*** information, as opposed to the information as an anonymous website browser. Although Plaintiffs allege that their IP address *may* have been disclosed (SAC ¶¶ 19, 89, 99), IP addresses are not assigned to specific people: they are assigned to computers or "proxy or intermediary" devices. *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *5 (N.D. Cal., Apr. 28, 2014); *Millennium TGA, Inc. v. Comcast Comm'ns LLC*, 286 F.R.D. 8, 14–15 (D.D.C. 2012) (it is "unlikely" that an individual's identity can be associated with a specific IP address). In any event, it is well settled that there is no legally protected privacy interest in an IP

---

here, where the only allegations are that the Plaintiffs browsed widely available commercial products (without specifically alleging, at least as to Plaintiff T.S., that those products were purchased).

[6] *See also Doe I v. Sutter Health*, No. 34-2019-00258072-CU-BT-GDS, 2020 WL 1331948, at *9 (Cal. Super. Ct. Jan. 29, 2020) ("Searching for general health information on [defendant's] public website is similar to searching for health information on Webmd.com or google.com. The Court finds [p]laintiffs do not have an objectively reasonable expectation of privacy in such disclosures."); *Smith*, 262 F. Supp. 3d at 954–55 ("[web]pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' [and] a wife's blog post about her husband's cancer diagnosis" did not qualify as "protected health information" because "[n]othing about the URLs, or the content of the pages located at those URLs, relates 'to the past, present, or future physical or mental health or condition of an individual'").

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

address. *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("Plaintiffs do not plausibly allege anything more than the collection of IP addresses, and there is no legally protected privacy interest in IP addresses."); *United States v. Forrester*, 512 F. 3d 500, 510 (9th Cir. 2008) ("[E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers."); *see also Tanner v. Acushnet Co.*, No. 8:23-cv-00346-HDV-ADSx, 2023 WL 8152104, at *7 (C.D. Cal. Nov. 20, 2023) ("[C]ourts are less likely to find that users have a cognizable privacy interest in browsing data collected only while users interact with the website of the defendant company.").

Third, Plaintiffs fail to allege any specific facts showing that the Tools operated on the webpages they allegedly visited. They plead in conclusory terms that, "on information and good faith belief," the entire shopping "process" on the Website is tracked by the Tools. SAC at ¶¶ 54–55. And, although they try to plead around this issue in their SAC by alleging in conclusory terms that the pages they visited allegedly had tracking tools (*Id.* ¶¶ 184, 193), Plaintiffs still do not allege any specific facts showing that the "custom events" they allege they took on the Website were disclosed to a third party. *Cousin*, 2023 WL 4484441, at *3 (dismissing claims where plaintiff failed to allege that the actions they took occurred on webpages "where Meta Pixel was embedded"). Moreover, Plaintiffs' allegations relying on "information and belief" fail because Plaintiffs do not plead any facts supporting the allegations or showing the basis for the belief. *See Crittenden v. Apple, Inc.,* No. 5:21-CV-04322-EJD, 2022 WL 2132224, at *4 (N.D. Cal. June 14, 2022) ("information and belief" allegations fail where "they do not allege facts upon which their beliefs are founded").

Accordingly, Plaintiffs' claims should be dismissed.

**B.  Plaintiffs' SAC Should Be Dismissed Because It Fails to Plead a Plausible Claim for Relief.**

Plaintiffs' failure to plead specific facts showing that any of their personal health

9

1    data was ever disclosed by (or even subject to) the Tools is itself a sufficient basis for

2    the Court to dismiss each of the claims in the SAC. But as set forth below, each of the

3    claims also should be dismissed because: (1) Plaintiffs fail to plead essential elements

4    of those claims, (2) the statutes are plainly inapplicable to the conduct alleged here, or

5    (3) they seek relief that is unavailable or impermissible.

6              **1.    Plaintiffs' Invasion of Privacy Claim (Count 1) Should Be**

7              **Dismissed.**

8         The "California Constitution and the common law both set a high bar for an

9    invasion of privacy claim." *Belluomini v. Citigroup, Inc.*, No. cv-13-01743-CRB, 2013

10   WL 3855589, at *6 (N.D. Cal. July 24, 2013). A plaintiff pleading an invasion of

11   privacy claim must plead facts showing "(i) the nature of any intrusion upon reasonable

12   expectations of privacy, and (ii) the offensiveness or seriousness of the intrusion,

13   including any justification and other relevant interests." *Heeger*, 509 F. Supp. 3d at

14   1193 (cleaned up). An "invasion of privacy" claim "must be sufficiently serious in

15   nature, scope, and actual or potential impact to constitute an egregious breach of the

16   social norms underlying the privacy right." *Id.* (quotation marks omitted). "The analysis

17   of whether an invasion of privacy is 'highly offensive' must [] focus on the degree to

18   which the invasion is 'unacceptable as a matter of public policy.'" *Cousin*, 2023 WL

19   4484441, at *6.

20        Plaintiffs' SAC fails to state an invasion of privacy claim. First, Plaintiffs have

21   failed to plead any facts showing that they submitted any personal health data to

22   Walgreens or that any highly offensive disclosure occurred even if Plaintiffs purchased

23   healthcare products. SAC ¶¶ 182–99. Plaintiffs merely assume that a third party could

24   infer or deduce "protected health information" specific to them based on their shopping

25   history, specifically their viewing and purchasing history on the Website. *Id.* ¶¶ 1, 53–

26   56. Plaintiffs do not allege that they were signed into any type of private portal or

27   otherwise had any expectation that they were sharing sensitive medical information—

28   under their flawed theory, any company can be sued for purportedly disclosing data

regarding someone's purchases even when no actual personal health information or condition or treatment information is disclosed and the buyer is not necessarily the end-user. California courts have rejected this type of claim. *See Cousin*, 2023 WL 4484441, at *3–4 (dismissing invasion of privacy claims based on public website browsing); *Heeger*, 509 F. Supp. 3d at 1193 (dismissing invasion of privacy claims where the court had "doubts about the seriousness of the alleged invasion"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (rejecting privacy claim that it was a "serious invasion" of privacy interest to "disclose[] a user's browsing history among LinkedIn profiles").

Second, Plaintiffs' claims fail because they have not alleged a reasonable expectation of privacy or a highly offensive intrusion that occurred without their consent. To the contrary, Plaintiffs' SAC expressly alleges that they voluntarily used the (public) Website to browse and shop for their purchases. *See* SAC ¶¶ 40–41. Moreover, as noted *supra*, Walgreens' Online Privacy and Security Policy (the "Privacy Policy") expressly states that it may "work with other companies who place ***cookies, tags, and web beacons on our websites***" to "help operate our website and provide you with additional products and services." Am. RJN, Ex. A at 7 (emphasis added). Further, the Privacy Policy informs customers that "[b]y interacting with Walgreens through [the Website], you consent to the practices described in this Privacy Policy," including the collection of information when customers make an online purchase. *Id.* at 4, 8, 11–12, 15. Information regarding how to opt-out of the disclosure of this information is also provided in the Privacy Policy. *Id.* at 7–8, 12, 16. Indeed, Virginia and California customers, like Plaintiffs here, are provided specific disclosures of how their information may be used by third parties. *See id.* at 11–16. These disclosures are sufficient to demonstrate Plaintiffs' consent. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028–29 (N.D. Cal. 2014) (plaintiffs were on notice and thus consented to defendants' alleged disclosures). And the California courts find that when "voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a

reasonable person so as to justify tort liability." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 3 (1994); *Forrester*, 512 F.3d at 509. Plaintiffs can hardly claim they did not expect Walgreens to use the information they were voluntarily disclosing when they expressly state they visited the Walgreens website and sought to purchase products: "there is no reasonable expectation of privacy when the data collection is within users' common-sense expectation or when the information is not sensitive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089–90 (N.D. Cal. 2022) (distinguishing the disclosure of sensitive information from "routine commercial behavior" like shopping on a website); *see* SAC ¶¶ 184, 191–94 (alleging voluntary purchases).[7] Accordingly, Count I should be dismissed.

## 2.    Plaintiffs' Negligence Claim (Count 2) Should Be Dismissed.

Plaintiffs have dropped two of their previously pleaded duty-based claims— breach of confidence and breach of fiduciary duty—but still allege a negligence claim. SAC ¶¶ 237–52. Plaintiffs' negligence claim should be dismissed because Plaintiffs have failed to allege any requisite duty owed by Walgreens or that they suffered any nonspeculative injury as a result of a breach of such duty.

First, Plaintiffs fail to allege a duty owed to them in connection with their alleged voluntary use of a virtual shopping cart to shop for commercial products on a public website. Plaintiffs claim that Walgreens' actions violated HIPAA, but "an alleged HIPAA violation cannot form the basis of a negligence claim" because HIPAA has no private right of action. *Austin v. Atlina*, No. 20-CV-6363-YGR, 2021 WL 6200679, at *3 (N.D. Cal. Dec. 22, 2021); see *Astra USA, Inc. v. Santa Clara Cty.*, 563 U.S. 110,

---

[7] Plaintiffs' allegations that the disclosed information was sensitive are also internally contradictory, as they acknowledge that the Tools in some cases disclose nonpersonal data, including browsing history. SAC ¶¶ 1, 53, 104. But Plaintiffs are now trying to assert some protected interest in their browsing history simply because they claim to be viewing "sensitive healthcare products" on the Website. *Id.* at ¶¶ 57, 72, 76. Even apart from Plaintiffs' voluntary consent, California courts have made clear that a disclosure of browsing history is not "highly offensive," as there can be no reasonable expectation of privacy over this sort of data. *Cousin* 2023 WL 4484441, at *6 ("disclosing a user's browsing history does not plausibly reach the level of 'highly offensive' conduct under either common law or the California Constitution").

117 (2011).[8] Likewise, Plaintiffs suggest that Walgreens owed them some further duty as the recipient of their purported health information, but California courts have rejected attempts to allege a duty arising from the receipt of personal information. *Cousin*, 2023 WL 4484441, at *5 (rejecting alleging of a "duty to safeguard personal and medical information consistent with medical privacy statutes and industry standards"); *Moore v. Regents of Univ. of California*, 51 Cal. 3d 120, 133 (no fiduciary duty between healthcare provider and patients). And the duty in a breach of confidence claim applies only to the disclosure of "confidential and ***novel*** information." *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002) (emphasis added). Plaintiffs have not and cannot allege anything "novel" (or confidential) about their intended purchase of commercial products. *See Friedman v. DirecTV*, 262 F. Supp. 3d 1000, 1006 (C.D. Cal. 2015) ("novelty" in a breach of confidence claim means something that "has never been done before").

Second, Plaintiffs fail to allege any "appreciable, nonspeculative, present harm" purportedly caused by the breach of Walgreens' alleged duty. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962–63 (S.D. Cal. 2012) ("The breach of a duty causing only speculative harm or the threat of future harm does not normally suffice to create a cause of action for negligence."). The alleged diminution in value, or loss of personal information, absent specific allegations of misuse or actual harm, is not sufficient to sustain Plaintiffs' claims under California law. *Id.*; *see also Kaiu Scuba Ctr., Inc. v. Padi Ams., Inc.*, No.

---

[8] This principle was recently reaffirmed in a separate Meta Pixel action in the Northern District of California. On September 7, 2023, the Northern District of California dismissed with leave to amend a plaintiff's negligence per se claim, which, like Plaintiffs' claims here, relied on a violation of HIPAA. *See Doe v. Meta Platforms, Inc.*, No. 22-CV-03580-WHO, 2023 WL 5837443, at *13 (N.D. Cal. Sept. 7, 2023). In dismissing the *Meta* plaintiffs' claim, Judge Orrick wrote: "Plaintiffs' only identified source of duty is HIPAA, and at least one court this District and another within the Ninth Circuit have rejected HIPAA as a basis of a negligence per se claim. . . ." Judge Orrick explained that plaintiffs would need to identify a state law source of a duty of care in order to bring their negligence claim. Plaintiffs in that matter did not replead a negligence claim in their amended complaint.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

SACV101579DOCMANX, 2011 WL 13227827, at *3 (C.D. Cal., Mar. 10, 2011) (dismissing breach of fiduciary duty claim based on "speculative damages"); *Low*, 900 F. Supp. 2d at 1032 (plaintiff failed to "articulate a nonspeculative theory of actual harm" where LinkedIn allegedly disclosed personal information); *Holly v. Alta Newport Hosp., Inc*., No. 219CV07496ODWMRWX, 2020 WL 6161457, at *4 (C.D. Cal. Oct. 21, 2020) ("improper disclosure of personal information" too speculative to support damages for negligence-based claims).

### 3.    Plaintiffs' Claim for Unjust Enrichment (Count 3) Should Be Dismissed.

Plaintiffs' unjust enrichment claim, SAC ¶¶ 253–68, should be dismissed because there is no independent cause of action for unjust enrichment in California. *See City of Oakland v. The Oakland Raiders,* 83 Cal. App. 5th 458, 477–78 (2022); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)). This well-settled principle was applied just last month in another case arising out of website privacy allegations. *See Griffith v. TikTok, Inc.*, No. 5:23-cv-00964 SB-E, 2023 WL 9019035, at *6 (C.D. Cal. Dec. 13, 2023). There, the court observed that the conclusion that unjust enrichment is not a standalone cause of action "finds ample support in other federal and California decisions." *Id.* (citing cases); *see also Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 17365255, at *12 (N.D. Cal. Dec. 1, 2022) (unjust enrichment claim failed where plaintiff could not plead an actionable misrepresentation or omission).

The unjust enrichment claim also should be dismissed because, although Plaintiffs offer a perfunctory allegation that they lack an adequate remedy at law, they fail to "plausibly allege or explain how the equitable relief they seek alongside damages is *more prompt, certain, or efficient than damages.*" *Medoff v. Minka Lighting, LLC*, No. 2:22-CV-08885-SVW-PVC, 2023 WL 4291973, at *12 (C.D. Cal. May 8, 2023) (emphasis added) (dismissing plaintiff's unjust enrichment claim for failing to provide any explanation why damages would not be "'any less prompt, certain, or efficient' than

14

1   nonrestitutionary disgorgement") (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d

2   834, 844 n.8 (9th Cir. 2020)). Plaintiffs simply allege they have no adequate remedy at

3   law, without any further explanation—which hardly is consistent with their prayer for

4   statutory damages in their other claims.

5          Moreover, Plaintiffs do not sufficiently demonstrate that Walgreens has unjustly

6   retained a benefit at Plaintiffs' expense. For Plaintiffs to bring an unjust enrichment

7   claim as an independent cause of action, Walgreens "must [have] received and retained

8   a financial benefit from [Plaintiffs'] data." *Hart v. TWC Prod. & Tech. LLC*, No. 20-

9   CV-03842-JST, 2023 WL 3568078, at *5 (N.D. Cal. Mar. 30, 2023). Here, Plaintiffs

10  fail to allege any nonspeculative, conclusory financial benefit to Walgreens. SAC ¶¶

11  94, 103, 153, 154, 157–58, 254, 257, 259. Plaintiffs allege they "began receiving

12  targeted ads on their Facebook accounts" which in turn led "more people to use

13  [Walgreens'] services" and reduced Walgreens' cost of advertising. SAC ¶¶ 104, 157–

14  58. However, the only specific allegation of a targeted ad received by Plaintiffs was the

15  advertising that Plaintiff T.S. received on her Facebook ***relating to her purchase of the***

16  ***diabetes testing kit*** (which Plaintiff does not allege was a Walgreens advertisement).

17  SAC ¶ 195. However, there are no alleged facts suggesting Walgreens receives a direct

18  financial benefit from Plaintiff T.S. receiving an ad unaffiliated with Walgreens for such

19  a product—instead, the diabetes testing kit company would. Further, the Privacy Policy

20  discloses that third parties may offer products to customers, and it provides information

21  on how to opt out of such offers. Am. RJN, Ex. A at 7–9. Plaintiffs fail to allege that

22  they received any Walgreens-specific targeted ads exemplifying any purported

23  monetization or direct financial benefit to Walgreens. *Cf. Hart*, 2023 WL 3568078, at

24  *5 (determining defendant provided "several programmatic ad exchanges with access

25  to users' data"); *In re Google Assistant Privacy Litig.*, 546 F. Supp. 3d 945, 968 (2021)

26  (concluding plaintiff's receipt of a targeted ad permitted Google to monetize plaintiff's

27  data by further improving the device functionality of Google's products such as Google

28  Assistant).

Further, Plaintiffs' reliance on *In re Facebook Internet Tracking Litig.* is also misplaced. SAC ¶ 266. While the court there determined that plaintiffs' allegations that Facebook sold data to advertisers in order to generate revenue sufficiently alleged Facebook's financial benefit from plaintiffs' data, the circumstances here are inapposite. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020). Plaintiffs' allegations regarding unsubstantiated benefits that Walgreens was ***allowed*** to receive are irrelevant in establishing any tangible financial benefit to Walgreens necessary to plead an unjust enrichment claim. SAC ¶ 74.

Lastly, for reasons already discussed *supra* at pp. 11 Plaintiffs affirmatively consented to and voluntarily provided their information to Walgreens. At no point did Walgreens collect information from Plaintiffs "in a manner contrary to expectations created by the consent process." *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-CV-04792-RS, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023). Plaintiffs' unjust enrichment claim therefore fails.

### 4. Plaintiffs' Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA") Claims (Counts 4 and 5) (the "Wiretap Claims") Must Be Dismissed.

Plaintiffs assert claims under Title I of the ECPA, also known as the Wiretap Act, SAC ¶¶ 269–97, and CIPA, California's analogue to the Wiretap Act, *id.* at ¶¶ 298–322. The Wiretap Act is violated when any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511. CIPA similarly makes it unlawful to "intentionally tap[], or make[] any unauthorized connection . . . or [] willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication." Cal. Pen. Code § 631(a).

As an initial matter, Plaintiffs' ECPA claim should be dismissed because the ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d) (no liability where "one of

the parties to the communication has given prior consent" to interception). It "only requires one party to the communication to consent to an interception." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014). Because Plaintiffs' allegations, if accepted as true, claim that Walgreens was voluntarily using the Tools, their ECPA claim fails because Walgreens consented to their use in connection with Plaintiffs' communications. *See Smith*, 262 F. Supp. 3d at 955 ("consent of one of the parties to the communication [is] sufficient to preclude liability under the Wiretap Act") (quotations omitted); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1080 (C.D. Cal. 2023).[9] Plaintiffs fail to plead allegations sufficient to invoke the exception under 18 U.S.C. § 2511(2)(d) because they do not plead any facts suggesting that "***the primary motivation or a determining factor*** in the interceptor's actions has been to injure plaintiffs tortiously." *Katz-Lacabe*, 2023 WL 2838118, at \*10 (emphasis added); *see Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (the focus of the crime-tort exception is on whether "the *purpose* for the interception—its intended use—was criminal or tortious") (citations and quotations omitted) (emphasis in original); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 939 (N.D. Ill. 2023) (rejecting application of crime-tort exception based on use of pixels, finding that the plaintiff had failed to allege that the data was intercepted for the purpose of committing a tort).

Plaintiffs' Wiretap Claims independently fail because Plaintiffs fail to plead the elements of their claims. "The analysis for a violation of CIPA . . . is the same as that under the federal Wiretap Act." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) (citations omitted). Both statutes require a plaintiff to allege an (1) intentional (2) interception of (3) the contents a communication. *See* 18 U.S.C. §§ 2510(1), (4), (8);

---

[9] Although CIPA requires the consent of all parties to the communication, *see* Cal. Pen. Code § 631(a), Plaintiffs' consent also is evident from the SAC's allegations. As discussed *supra*, they voluntarily visited the Website (a public consumer-facing shopping website) for the purpose of purchasing consumer goods. SAC ¶ 182–99.

Cal. Pen. Code § 631. Although CIPA does not define "contents," the Wiretap Act defines "contents" as "information concerning the substance, purport, or meaning of that communication." 18 U.S.C.A. § 2510(8). "The contents of a communication under CIPA and the [] Wiretap Act are the same." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (quotation marks omitted).

First, Plaintiffs fail to plead allegations that any interception of Plaintiffs' data by third parties through the Tools was intentional. To plead intent, Plaintiffs must plead facts showing that Walgreens "acted consciously and deliberately with the goal of intercepting wire communications." *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015); *see Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (a plaintiff must allege that either the "primary motivation or a determining factor in [Walgreens'] actions [was] to injure [them] tortiously"). While Plaintiffs allege Walgreens "installed certain tracking technologies on its Website in order to intercept and send" Plaintiffs' data, SAC ¶ 18, this is not only conjecture but is also insufficient to support Walgreens' intent. Their factual allegations fail to show that Walgreens was even collecting confidential health data during Plaintiffs' use of the Website, let alone that there was any intent to disclose such information. Plaintiffs thus fail to plead "specific factual circumstances that make plausible [Walgreens'] intent to record a confidential communication." *Vartanian v. VW Credit, Inc*., No. 2:11-cv-10776-SVW-RZ, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012).

Second, Plaintiffs fail to sufficiently allege what "contents" of any of Plaintiffs' communications were intercepted. Contents "do[] not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (citations omitted). Here, Plaintiffs never allege they actually submitted "Protected Health Information" or any actual content on the Website. Plaintiffs allege only that, at some unknown point in time in the last year, they browsed the Walgreens website to shop for commercial health products. SAC ¶¶ 184–98; *see Wilson v. Rater8, LLC*, No. 20-CV-

1515-DMS-LL, 2021 WL 4865930, at *3 (S.D. Cal., Oct. 18, 2021) (plaintiff must plead facts beyond a "speculative possibility" that technology violated a statute). Moreover, Plaintiffs' allegations expressly allege that the tracking pixels are highly configurable and, although they have the potential to track specific content (depending on their configuration), they also can track record information like "metadata" about the website and the user's interactions. SAC ¶ 79. But there are no specific facts alleged showing why it is plausible that the tracking pixels here were configured to track protected content as opposed to inactionable metadata. *See Doe v. Meta Platforms*, No. 22-cv-03580-WHO, 2023 WL 5837443, at *8 (N.D. Cal. Sept. 7, 2023) (dismissing privacy claim with leave to amend where plaintiff failed to distinguish between protected and unprotected data that was allegedly disclosed). Because Plaintiffs fail to plead any facts suggesting that any protected content was allegedly intercepted from their communications, their Wiretap Claims should be dismissed. *See Graham*, 533 F. Supp. 3d at 833 (record data "generated in the course of the communication" is not actionable) (quoting *Zynga*, 750 F.3d at 1106); *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 265 (N.D. Cal. 2016) (same); *Katz-Lacabe*, 2023 WL 2838118, at *9 (same).

Third, for the reasons already discussed, and based on Plaintiffs' alleged voluntary disclosure of their confidential information, they cannot allege that any of their confidential information was "intercepted" by Walgreens. To the contrary, by Plaintiffs' own allegations, they ***intended*** for Walgreens to receive their communications for the purpose of purchasing over-the-counter commercial health products. *See Kurowski*, 659 F. Supp. 3d at 938 (no interception by "the intended recipient of the allegedly intercepted communications"). Accordingly, Plaintiffs' Wiretap Claims should be dismissed.

> **5.   Plaintiff's California's Unfair Competition Law ("UCL") and California Consumers Legal Remedies Act ("CLRA") Claims (Counts 6 through 8) Should Be Dismissed.**

Plaintiff R.C.'s UCL and CLRA claims are wholly inapplicable to the conduct alleged here. SAC ¶¶ 323–67. The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice" or misleading advertising. Cal. Bus. & Prof. Code § 17200. The CLRA prohibits "[passing] off goods or services as those of another." Cal. Civ. Code § 1770(a)(1). Because Plaintiff's allegations under both statutes sound in fraud, they must be pleaded with particularity under Fed. R. Civ. P. 9(b). *Garcia v. Sony Comput. Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1061 (N.D. Cal. 2012) ("Rule 9(b) applies to claims under California's UCL and CLRA that 'allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis' for liability.") (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). For the reasons set forth *supra*, Plaintiff's allegations do not satisfy Rule 8(a), let alone the heightened pleading requirements under Rule 9(b).

Plaintiff's UCL and CLRA claims separately fail because Plaintiff does not and cannot allege that she suffered an injury in fact (i.e., an actual economic loss or injury), which is required under both statutes. Cal. Bus. & Prof. Code § 17204 (standing limited to a "person who has suffered injury in fact and has lost money or property"); *Vinluan-Jularbal v. Redbubble, Inc.*, No. 2:21-cv-00573-JAM-JDP, 2021 WL 4286539, at *3 (E.D. Cal. Sept. 21, 2021) (for standing under the UCL or CLRA, plaintiff must "establish a loss of deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury") (quotations and citation omitted). Courts have consistently rejected allegations of a diminution in value or misappropriation of personal data as a basis for a compensable loss under the UCL or CLRA. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (even though plaintiff had alleged that data has "external value," he had failed to allege that it had "economic value" to ***him*** and thus had not established that he "personally lost money or property") (quotations and citations omitted); *see Katz-Lacabe*, 2023 WL 2838118, at *8 (surveying California law in April 2023 and finding "[t]he weight of the authority in the district and the state, however, point in the opposite direction: that the mere misappropriation of personal

20

information does not establish compensable damages") (external quotations omitted). Likewise, courts have rejected efforts to plead losses relating to potential future harm based on the alleged loss of personal data. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (courts "have consistently rejected" a broad interpretation of "money or property"); *In re Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (referring to such injuries as "purely hypothetical"); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014) (same).[10] Indeed, the Ninth Circuit has held that although the loss in value of disclosed personal information is sufficient to plead a breach of contract claim, it does not sufficiently allege a loss under the UCL. *In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014); *see also Tanner*, 2023 WL 8152104, at *8 (plaintiff cannot allege lost money or property relating to personal data where plaintiff "does not allege that he intended to or attempted to participate in this data market").

Plaintiff's UCL claim based on unlawful and fraudulent business practices (Count 6) also should be dismissed because it alleges that Walgreens engaged in fraudulent business acts and practices, SAC ¶¶ 329–36, without alleging facts showing any "actual reliance" on any alleged misrepresentation. *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal of UCL claim where plaintiff did not allege reliance). Indeed, Plaintiff does not allege that she "read and relied on" any specific misrepresentation (or read and relied on any specific disclosure where she alleges that material information was omitted). *Id.* ("Because Haskins's complaint did not allege that she read and relied on a specific misrepresentation by Symantec, she

---

[10] Although the Ninth Circuit has found that purported unjust enrichment by a third party who obtains personal data may be sufficient to confer Article III standing for a federal court, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600, that decision did not concern whether it was sufficient to demonstrate an actual injury for statutory standing. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 485 (N.D. Cal. 2021) (finding Article III standing based on *Facebook*, but nonetheless dismissing because there was no actual loss). In any event, Plaintiff has not alleged any facts showing *Walgreen's* unjust enrichment, only that of the third-party pixel developers.

1    failed to plead her fraud claims with particularity as required by Rule 9(b). . . .").
2    Accordingly, Count 6 fails to state a claim.

3              **6.    Plaintiff's Claim Under the Virginia Consumer Protection Act**
4              **(Count 9) Should Be Dismissed.**

5          Plaintiff T.S.'s claim under the Virginia Consumer Protection Act ("VCPA") also
6    should be dismissed. SAC ¶¶ 368–88. The VCPA generally prohibits "misrepresenting
7    goods or services," and thus requires a plaintiff to plead the elements of a
8    misrepresentation claim. *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 656 (W.D.
9    Va. 2013); *Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901 (W.D. Va. 2022).
10   Because it sounds in fraud, a plaintiff is required to satisfy the heightened pleading
11   standard of Fed. R. Civ. P. 9(b). *See id.* (Rule 9(b) applies to VCPA claims); *see also*
12   *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015) (same);
13   *James v. Delta Motors, LLC*, No. 7:22-CV-441, 2023 WL 3306551, at *5 (W.D. Va.
14   May 8, 2023). Under this standard, plaintiffs seeking to bring a VCPA-based claim are
15   required to "state with particularity the circumstances constituting fraud or mistake,
16   including the time, place, and contents of the false representations, as well as the identity
17   of the person making the misrepresentation and what he obtained thereby." *Student A*,
18   602 F. Supp. 3d at 917 (internal citations omitted). As discussed above, Plaintiff's
19   VCPA claims fail to meet the pleading standard of Fed. R. Civ. P. 8(a), much less the
20   more exacting particularity requirement under Rule 9(b). Accordingly, Plaintiff's
21   claims under the VCPA should be dismissed.

22         Second, to allege a misrepresentation under the VCPA, a plaintiff must plead
23   actual reliance on an alleged misrepresentation by Walgreens. *See Fravel,* 973 F. Supp.
24   2d at 658 ("Virginia courts have consistently held that reliance is required to establish
25   a VCPA claim."); *Adardour v. Am. Settlements, Inc.*, No. 1:08-cv-798 (AJT/TRJ), 2009
26   WL 1971458, at *3 (E.D. Va. July 2, 2009) (same). Plaintiff's only statement regarding
27   reliance is that she and the Subclass Members "relied on [Walgreens] to advise them of
28   any potential disclosures of their Private Information." SAC ¶ 376. However,

1  Walgreens advised Plaintiff of potential disclosures of her information in its detailed
2  Privacy Policy. *See generally* Am. RJN, Ex. A. Further, Plaintiff does not even allege
3  that she ever read or reviewed any of these disclosures; thus, this is nothing more than
4  an insufficient and "[t]hreadbare recital[]" of a necessary element under the VCPA. *See*
5  *Iqbal*, 556 U.S. at 678. Further, reliance under the VCPA must be "reasonable and
6  justified." *See Adardour*, 2009 WL 1971458, at *3. Given that Plaintiff alleges she
7  voluntarily interacted with a public website where she could have no expectation of
8  privacy, it is difficult to see—and Plaintiff does not explain—how her reliance on any
9  purported statement by Walgreens could be reasonable. *See Student A*, 602 F. Supp. 3d
10 at 918 ("The amended complaint simply does not include factual allegations that (as
11 argued), *[p]laintiffs* relied on such alleged misstatements. . . .") (emphasis in original).
12     Third, like the UCL and CLRA, the VCPA requires a plaintiff to plead ***actual***
13 ***loss*** to seek damages. *See* Va. Code Ann. § 59.1-204(A); *Attias v. CareFirst, Inc.*, 365
14 F. Supp. 3d 1, 10–11 (D.D.C. 2019) ("The Virginia Consumer Protection Act also
15 requires a plaintiff to plead actual loss in order to bring a suit for damages under the
16 Act.") (citing *Polk v. Crown Auto, Inc.*, 228 F.3d 541, 543 (4th Cir. 2000)). Plaintiff
17 T.S. fails to plead any actual loss—instead, Plaintiff's only alleged losses are her
18 purported intangible and speculative losses related to the "diminished" value and loss
19 of her personal information. *See* SAC ¶¶ 175, 291. Under the VCPA, like under the
20 UCL and CLRA, such allegations do not plead a recoverable loss. *See Attias*, 365 F.
21 Supp. 3d at 11–12 (potential misuse of personal data did not support VCPA claim).
22 **V.    CONCLUSION**
23     For the foregoing reasons, Walgreens respectfully requests that the Court grant
24 this Motion and dismiss Plaintiffs' claims with prejudice.
25 ///
26 ///
27 ///
28 ///

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

Dated:  January 19, 2024                    SIDLEY AUSTIN LLP


                                            By:  *Amy P. Lally*
                                                 Amy P. Lally
                                                 Ian M. Ross
                                                 Christopher D. Joyce
                                                 Marissa X. Hernandez

                                            *Attorneys for Defendant Walgreen Co. d/b/a Walgreens*


## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Walgreen Co., certifies that the Memorandum of Points and Authorities in support of Walgreens' Motion to Dismiss the Second Amended Complaint does not exceed 25 pages, which complies with Judge Jesus G. Bernal's standing order and supersedes the word limit restriction of L.R. 11–6.1.

Dated:  January 19, 2024                    *Amy P. Lally*
                                            Amy P. Lally